UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
|     CASEY JOHN JASON | ) | Case No. 01-10082-SSM |
| | ) | Chapter 7 |
|                   Debtor | ) | |
| | ) | |
| CASEY JOHN JASON | ) | |
| | ) | |
|                   Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 07-1030 |
| | ) | |
| CARPET CLEANING, INC., *et al.* | ) | |
| | ) | |
|                   Defendants | ) | |

**MEMORANDUM OPINION**

      This is an action by Dr. Casey John Jason, a debtor who waived discharge in his chapter 7 case, to determine his liability on a $59,123.22 state court judgment that had been rendered against him in favor of Carpet Cleaning, Inc., doing business as CCI ("CCI"). The defendants are CCI and Elle Walter, who is the assignee of the judgment. A trial was held without a jury on November 27, 2007, at which all parties were represented by counsel. This opinion constitutes the court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52(a).

<u>Background and Findings of Fact</u>

      The facts are largely undisputed. Casey John Jason is an emergency room physician. He filed a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code in this

1

court on January 9, 2001, and remained in possession of his estate until September 1, 2001, when a chapter 11 trustee was appointed. Following an unsuccessful attempt by Dr. Jason to obtain confirmation of a chapter 11 plan, the case was converted to chapter 7 on December 18, 2002. In response to an adversary proceeding by the chapter 7 trustee objecting to Dr. Jason's discharge, Dr. Jason executed a waiver of discharge which was approved by the court on April 1, 2004.[1] The trustee's final report and proposed distribution was approved on April 5, 2005. The funds in the estate were insufficient to pay the administrative claims in full, and no distribution was made to non-administrative creditors. The case was formally closed on January 18, 2007, but was reopened at the debtor's request on February 28, 2007, to permit the present adversary proceeding to be brought.

Dr. Jason's largest asset was a partially completed house located at 812 Great Cumberland Road, McLean, Virginia. Prior to the chapter 11 filing, Dr. Jason had entered into a contract with CCI to install hardwood flooring in the house for a price of $89,952.53. The flooring had not been installed at the time Dr. Jason filed the chapter 11 petition, and CCI had obtained a default judgment against him in the Circuit Court of Fairfax County, Virginia, for $59,123.22 on December 15, 2000. Although the testimony as to how the judgment amount was computed was not entirely clear, it appears that $5,000.00 represented demolition of existing flooring and the remaining $54,123.22 represented the cost of wood that had been specially milled for the job. CCI filed a timely proof of claim (Claim No. 10) in the amount of the judgment.

---

[1] Dr. Jason's subsequent motion to withdraw the waiver of discharge was denied on September 13, 2005.

2

Prior to the appointment of the chapter 11 trustee, CCI had filed a motion to compel Dr. Jason, as debtor-in-possession, to install the unfinished flooring. Attached to the motion was a proposal by CCI dated August 22, 2001, to do the work for $130,000. The quoted price included the cost of the wood for which CCI had already obtained a judgment. The motion to compel was denied by the court, but on November 30, 2001, the chapter 11 trustee wrote to CCI's attorney stating that he was prepared to accept the proposal with certain modifications. In particular, the trustee stated the following understanding:

> I understand the installation price under the Proposal is $130,000. . . . Your client will be paid when the house is sold. Payment to your client shall occur after payment of all costs of sale, including but not limited to, real estate commission, costs of maintaining property, payment of secured creditor (Gus Goldsmith) claim in full, and the Trustee's commission and attorneys fees and costs. Your client will be paid from any remaining proceeds before payment to any general unsecured creditors. . . . When your client has been paid in full under the Proposal, its judgment against Dr. Casey John Jason, which forms the basis for your Proof of Claim in the Bankruptcy case, will be deemed paid and satisfied in full.

The letter was signed "seen and agreed to" by CCI's attorney and Mr. Goldsmith's attorney. The trustee then filed an application with the court for approval of the agreement. The application was granted by order entered January 2, 2002. The recitations in the order include the following:

> The Agreement provides a priority for the payment of CCI, after the costs of sale, payment to Goldsmith, the Trustee's commission and attorneys fees and costs, but before any other creditor. Further, if there are no remaining proceeds of sale to cover the unpaid costs of CCI, Goldsmith shall pay the difference.

CCI performed the flooring installation, for which it presented invoices totaling $142,744.19. ( James Stallings, the owner of CCI, testified that the trustee had agreed to $12,744.19 of extra work). There is no dispute that the invoices included the cost of the wood for which CCI had obtained judgment against the debtor. As it turned out, the property sold for

3

significantly less than expected.  Under the terms of an order entered on June 24, 2002, approving what was essentially a short sale, CCI ended up receiving only $92,000.[2]  CCI then filed an administrative claim for the $50,744.19 difference.  That claim was denied following a hearing held on December 16, 2002, on the ground that under the order approving the agreement among CCI, Goldsmith, and the chapter 11 trustee, CCI could look only to the sales proceeds or Goldsmith for the payment of its invoices.  Following that ruling, CCI filed two identical proofs of claim (Claims No. 53 and 55), each in the amount of $50,744.19 (the same amount as the administrative claim).  As noted, no distribution was made by the trustee on account of general unsecured claims.  Since the closing of the bankruptcy case, Walker, as assignee of the CCI judgment, has recovered $1,000.00 by garnishment.

Conclusions of Law and Discussion

I.

The complaint in this action is pleaded in three counts.  Count I seeks a declaratory judgment that the agreement between CCI, the chapter 11 trustee, and Goldsmith constituted a novation releasing Dr. Jason from liability.  Count II seeks a declaratory judgment that Dr. Jason's liability has been discharged by the $92,000.00 payment that CCI received from the trustee.  And Count III seeks disallowance of all three claims filed by CCI on the ground that the first was satisfied by the $92,000.00 payment and the other two are duplicative of the disallowed administrative expense claim.

---

[2] The sales price was $1,789,000.  The motion to approve the sale represented that the balance owed to Goldsmith exceeded $1,650,000, and it proposed to pay him $1,520,310.  The motion further stated that CCI, which was to receive $92,000, "is reserving its right to seek administrative expense treatment for the remaining portion of its claim."

The question of this court's subject-matter jurisdiction over Count I was discussed at length in the memorandum opinion on the debtor's motion to reopen his case and need not be repeated. *In re Casey John Jason,* No. 01-10082-SSM (Bankr. E.D. Va., February 28, 2007). Suffice it to say that Count I, in the court's view, "arises in" the debtor's bankruptcy case within the meaning of 28 U.S.C. § 1334(b) and therefore falls within the category of matters over which this court may exercise jurisdiction under 28 U.S.C. § 157(a) and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984.

Whether this court has subject-matter jurisdiction over Count II is a more difficult question. A determination of the balance due on a non-discharged judgment against a debtor clearly does not arise under the Bankruptcy Code. Nor is it "related" to the debtor's case in the sense that resolution of the dispute would affect distribution to creditors. Additionally, the mere fact that the $92,000 payment was made *during* the case is not sufficient, standing alone, to make the dispute one that "arises in" the bankruptcy case. Here, however, there is more than simply a temporal connection between the payment and the bankruptcy; rather, the dispute centers on the proper interpretation to be given to two orders entered by this court, one approving the agreement among the trustee, CCI and Goldsmith, and the other allowing the short sale and directing payment of the proceeds. For that reason the court concludes that Count II, like Count I, arises in Dr. Jason's bankruptcy case.

As to Count III, an objection to allowance of claims against a bankruptcy estate is clearly a dispute that arises under the Bankruptcy Code and therefore one that falls within this court's subject-matter jurisdiction. There is, however, the question of whether the objection raises an actual controversy, since administration of the estate has been concluded and at the present time

there are no funds for the payment of unsecured creditors. Bankruptcy courts, like other federal courts, may decide only actual cases and controversies. U.S. Const., Art. III, § 2. Put another way, "a federal court has no 'power to render advisory opinions [or] ... decide questions that cannot affect the rights of litigants in the case before them.'" *Pressley Ridge Schools v. Shimer*, 134 F.3d 1218, 1220 (4th Cir. 1998) (*citing Honig v. Doe*, 484 U.S. 305, 317, 108 S.Ct. 592, 601, 98 L.Ed.2d 686 (1988)). As the district court for this district has explained, a controversy is "moot in the constitutional sense whenever the judicial determination sought would have no practical effect." *McLean Square Assocs. v. J.W. Fortune, Inc. (In re McLean Square Assocs.)*, 200 B.R. 128, 131 (E.D. Va. 1996). Dr. Jason does not contend in this case that assets are likely to become available that would fund a distribution to unsecured creditors. In the absence of such a distribution, disallowance of CCI's claims would have no practical effect, since the whole point of the claims allowance process is to determine which claims will share in the distribution of estate assets. Dr. Jason's concern, however, is that the listing of CCI's proofs of claim on the claims register does have a practical collateral effect because CCI has taken the position that the register—which shows no payment having been made on account of its claim—establishes that the full amount of the judgment is owed.[3]  In any event, this court has previously held that a debtor who did not receive a discharge has standing to object to a filed proof of claim with respect to a debt that will survive the discharge. *In re Richard Rae*, No. 97-12939-SSM (Bankr. E.D. Va., April 20, 1999), Memorandum Op. at 8-11, *aff'd Rae v. Estate of Van Buren (In re*

---

[3] The reference in the complaint to the "claims register" seems to be to the form entitled "Claims Register" that was prepared by the trustee and attached as an exhibit to his final report and proposed distribution (Doc. # 549), rather than to the register of claims that the clerk is required to maintain under Rule 5003(b).

*Rae)*, 34 Fed.Appx. 897 (4th Cir. 2002).[4]  Based on that holding, the court concludes that the challenge to CCI's filed claims is not moot simply because it will not affect administration of the estate.

## II.  Novation

Dr. Jason takes the position that the agreement between CCI, the chapter 11 trustee, and Goldsmith constituted a novation releasing him from liability.  A novation has been defined as the substitution of a new contract, debt, or obligation for an existing one, between the same or different parties.  Black's Law Dictionary 959 (5th ed. 1979).  As explained by the Restatement (Second) of Contracts,

> A novation is a substituted contract that includes as a party one who was neither the obligor nor the obligee of the original duty. . . . A novation *discharges the original duty*, just as any other substituted contract does, so that breach of the new duty gives no right of action on the old duty.  Most novations simply substitute a new obligor for an old obligor or, less commonly, a new obligee for an old obligee. . . .  Although all parties usually assent to a novation, a novation is possible without the assent of the obligor of the original duty . . . *if that party is an intended beneficiary* and does not disclaim.

Restatement (2d) of Contracts § 280 and Comment b & c. (1981) (emphasis added).[5]  *See also*

*Wheeler v. Wardell*, 173 Va. 168, 177, 3 S.E.2d 377, 381 (1939) (explaining that "novation

---

[4] This court's opinion, although unpublished, is available on the court's Internet web site at www.vaeb.uscourts.gov/opinions/ssm/rae_claim.pdf.

[5] In the context of dischargeability litigation, the term novation has also been used to express the substitution of a dischargeable contract claim for a non-dischargeable tort claim through a settlement agreement.  *Archer v. Warner (In re Warner)*, 283 F.3d 230, 236 n.8 (4th Cir. 2002), *reversed* 538 U.S. 314, 123 S.Ct. 1462, 155 L.Ed.2d 454 (2003).  Since Dr. Jason did not receive a discharge in his bankruptcy case, the specific issue raised in *Warner* is not present here.

implies the extinguishment of an existing debt by the parties thereto and its transition into a new existence between the same or different parties").

In the present case, the agreement to install the flooring clearly involved a new party, namely, the chapter 11 trustee, who was not a party to the original contract between CCI and the debtor. Although the second agreement expanded the scope of the work to be done, the essential subject matter remained the same. As noted from the discussion in the Restatement, the fact that Dr. Jason was not a signatory to the second agreement does not prevent a finding that it operated as a novation if the evidence shows that he was an intended beneficiary.

The problem in this case, however, is that there is no evidence that CCI, in entering into the agreement with the trustee, intended to release Dr. Jason and to look only to the bankruptcy estate and Goldsmith for the payment of its claim. Although CCI clearly agreed that *payment* of the $130,000 contract price would discharge its judgment against Dr. Jason, there is no language in the agreement, the motion for its approval, or this court's order granting the motion that could fairly be construed as *substituting* the agreement for the judgment, as required for a novation. Instead, the agreement more closely falls under the rubric of an accord and satisfaction. An accord and satisfaction, however, requires both an agreement (the "accord") and its performance (the "satisfaction"). As noted, CCI did not receive $130,000, but only $92,000. Since it did not receive the full amount it had bargained for as a condition of releasing the judgment, it is difficult to see how Dr. Jason's liability can be said to have been extinguished.

Dr. Jason suggests, however, that the shortfall amounts to a self-inflicted wound, since under the terms of the agreement Goldsmith was responsible for paying any portion of the $130,000 not paid by the trustee because of insufficient sales proceeds. CCI concedes that it has

never made demand on Goldsmith for the shortfall but argues that the consent order approving the short sale effectively relieved Goldsmith of that obligation because Goldsmith himself received only a portion of what he was owed. Although the order approving the sale is not a model of clarity and does not specifically address the issue, the court finds CCI's understanding to be reasonable given the circumstances that existed at the time the sale was approved. More to the point, even if the court were to conclude that CCI still has a viable claim against Goldsmith, such a claim would be in addition to, and not a substitute for, any claim it might have against the debtor. CCI, to be sure, is only entitled to a single satisfaction of its loss, but there is no legal requirement that it exhaust other sources of payment before seeking to collect its judgment against Dr. Jason.

There does, however, remain the issue of whether CCI's agreement to accept the $92,000 specified in the sale order for the Cumberland Road property also constituted an agreement that payment of the reduced amount would result in its judgment against Dr. Jason being "deemed paid and satisfied in full," as provided in the earlier agreement. The court cannot find that it does. The motion to approve the sale specifically noted that CCI was reserving its right to seek payment of the remaining portion of its claim. Although the court denied CCI's motion to allow the shortfall as an administrative expense claim, the only issue before the court on that motion was whether CCI was entitled to look to the bankruptcy estate for its payment. The court made no ruling that CCI had waived its right to seek payment from other sources or that payment of the $92,000 had caused the judgment to be "deemed paid and satisfied in full."

In short, the court is unable to find from the evidence that CCI, in entering into the agreement with Goldsmith and the trustee to install the flooring, intended to substitute the

9

agreement for the judgment. Nor can the court find that CCI, in accepting $92,000 from the proceeds of the sale, intended to waive its judgment against the debtor. Accordingly, judgment will be entered for the defendants dismissing Count I.

### III. Discharge by Payment

Dr. Jason urges that even if his liability for the judgment was not discharged by novation, it was nevertheless discharged by payment, since the $92,000 the trustee paid to CCI far exceeded the amount of the judgment, which included the very same flooring that CCI had supplied to the trustee. The problem with this argument is that CCI's agreement with the trustee, while it included the cost of the wood CCI had purchased to perform its original contract with Dr. Jason, included much more, in particular, the labor to install the flooring as well as the purchase and installation of shoe molding. Implicit in the debtor's argument is the assumption that CCI was required to apply any payment it received from the trustee first to the judgment, then to the additional work and materials that it provided under its agreement with the trustee. However, nothing in the language of the agreement among CCI, Goldsmith, and the trustee requires such an allocation, and no legal authority has been cited for the proposition that a debtor may compel a creditor to apply a third-party payment to specific components of the creditor's claim or in the way that is most advantageous to the debtor.

Of course, even though the debtor is not entitled to direct *how* a third-party payment is to be applied, the debtor does have the equitable right to insist that any surplus funds after the other portions of the debt have been paid be credited against the remaining liability. Put another way, a creditor is entitled to only a single satisfaction of its claim. Here, the scope of CCI's contract with the trustee was fully inclusive of the flooring that was the subject of the judgment. The

total amount claimed due under the contract with the trustee was $142,744.19.  Of this amount,

$59,123.22 was duplicative of the work and materials for which CCI had already obtained

judgment.  The difference, $83,620.97, represents the additional work and materials to complete

the contract with the trustee.  Even if the $92,000 payment by the trustee is applied first to the

additional work and materials, a balance of $8,379.03 remains that in equity should be treated as

a credit against the judgment.  Accordingly, while the court will not grant the specific relief

requested by Dr. Jason, the court will declare his entitlement to a credit of $8,379.03 against the

judgment.

### IV.  Objection to CCI's Claims

There remains, finally, the debtor's objections to the three claims filed by CCI.  The first,

as noted, was in the amount of its judgment, $59,123.22.  The remaining two (each clearly

duplicative of the other) are in the amount of $50,744.19, the same amount as its denied

administrative expense claim for the difference between its invoices to the trustee and the

payment it received when the house was sold.  At trial, CCI's current attorney (who had no part

in filing the claims) was unable to explain the purpose of the later two claims.[6]  One possibility is

that they were intended to reassert, as a general unsecured claim, the previously denied

administrative claim.  If so, they would have to be disallowed for the same reason as the

administrative claim was denied.  (And, obviously, one of the two would be denied as

duplicative of the other in any event).  But the later claims could also be viewed simply as

---

[6] At some point, CCI apparently took the position that the debtor was independently liable for any shortfall in the payment of its administrative claim.  CCI did not pursue this theory at trial, and the court has no difficulty in concluding that a chapter 7 debtor, whether or not he receives a discharge, is not liable for unpaid debts incurred by the bankruptcy estate.

11

amendments to the original proof of claim to reflect the balance actually owed to CCI after application of the $92,000 payment. Given the sequence of events, the court believes the latter interpretation to be the most sensible and will construe the proofs of claim accordingly. Since the revised amount comports with this court's analysis of the credit to which the debtor is entitled against the judgment, the court will deny the original claim as superceded by the first of the two later claims, and will disallow the second of the two later claims as duplicative of the first, leaving a single claim in the amount of $50,744.19 as the allowed amount of CCI's claim.

A separate judgment will be entered consistent with this opinion.

Date: _____      _____
                                            Stephen S. Mitchell
Alexandria, Virginia                        United States Bankruptcy Judge

Copies to:

Richard J. Stahl, Esquire
Stahl, Forest & Zelloe P.C.
11350 Random Hills Road, Suite 700
Fairfax, VA  22030
Counsel for the plaintiff

John T. Donelan, Esquire
Law Offices of John T. Donelan
125 South Royal Street
Alexandria, VA  22314
Counsel for the defendants